AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California


FILED
JUL 02 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched or identify the person by name and address)*  )
)   Case No. 19MJ2762
Google, Inc.  )
1600 Amphitheater Parkway  )
Mountain View, California  )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 554 | Export Contrary to Law |
| 16 USC 1538(c)&(e)1540(b)(1) | Illegal Export of Wildlife |
| 18 USC 371 | Conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Michelle Zetwo, Special Agent, NOAA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/2/19

_____
Judge's signature

City and state: San Diego, California

Hon. Jill L. Burkhardt, US Magistrate Judge
*Printed name and title*

## ATTACHMENT A

Google, Inc. is an Internet Service Provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 1600 Amphitheater Parkway, Mountain View, California 94043.

## ATTACHMENT B

I. Service of Warrant

The officer executing the warrant shall permit Google, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II. Items to be provided by the ISP

All subscriber and/or user information, all electronic mail, images, text messages, histories, phone and VoIP logs, contacts or friend lists, profiles, method of payment, detailed billing records, access logs, backup data, transactional data, and any other files or records associated with the following account and screen name(s):

1. aquamartj@gmail.com (for the period from January 4, 2016 to present)

III. The search of the data supplied by the ISP pursuant to this warrant will be conducted by authorized federal agents of the National Oceanic and Atmospheric Administration and/or the U.S. Fish and Wildlife Service, as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the date ranges set forth above in item II. and to the seizure of:

    1. Records relating to the exportation of coral from the United States, including records identifying the date of export, the nature and quantity of the items exported, the value of the items exported, the identity of the transporter, and the name, address, telephone number, and any other identifying information provided the exporter and recipient;

2. Records relating to the sale of coral that had been exported from the United States, including records identifying the date of purchase and export, the nature and quantity of the items purchased and exported, the value of the items purchased and imported, the identity of the transporter, and the name, address, telephone number, and any other identifying information provided by the exporter, purchaser and recipient, and the method and means of payment;

3. Records relating to the shipping, transportation and storage of coral, including the dates of transport, the nature and quantity and value of items transported, the method and means of payment, and the name, address, and telephone number and other identifying information provided by the shipper and recipient;

4. Records relating to the purchase, sale and trade of coral including the date of the purchase and/or sale or trade, the price or item offered in trade, the method and means of payment, the name, address, telephone number used by the buyer and seller, and the nature and quantity of items purchased and sold;

5. Records and images tending to identify persons exercising dominion and control over the target accounts;

6. Financial records related to the purchase, sale, importation, exportation and transportation of coral;

7. Images (still and video) of coral exported, purchased, traded and sold or intended to be exported, purchased, traded and sold;

8. Records of communication with any governmental entity (federal, state, local or foreign) regarding the purchase, sale, importation or exportation of coral;

9. Permits and licenses issued by a government entity (federal, state, local or foreign) related to the importation, exportation, transportation, capture, purchase and sale of coral;

10. Records indicating problems or questions from government agencies (federal, state, local and foreign) relating to the importation, exportation, transportation, sale and purchase of coral;

11. Records relating to the legal requirements for importation, exportation, purchase and sale of coral in both the United States, Australia and the United Kingdom and records reflecting knowledge of the permits and/or CITES status of species of fish and wildlife;

12. Records tending to identify co-conspirators in the exportation or trafficking of coral;

which constitute evidence of violations of 18 U.S.C. § 371 (Conspiracy); 18 U.S.C. §554 (Exportation Contrary to Law); 16 U.S.C. §§ 3372(d) and 3372(d) (Submission of False Records); Title 16, United States Code, Sections 1538(e) and 1540(b)(1) (knowing exportation of fish and wildlife without filing the required declaration); Title 16, United States Code, Sections 1538(c)(1) and 1540(b)(1) (knowing violation of regulations implementing the Convention on International Trade in Endangered Species) related to illegal trade in coral.

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Michelle Zetwo, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent (SA) of the United States Department of Commerce, National Oceanic and Atmospheric Administration (NOAA), Office of Law Enforcement, and have been so employed for approximately 21 years, currently assigned to the San Diego field office. Prior to my employment as a special agent, I was an enforcement officer for NOAA in Oregon for one year, inspecting commercial fishing vessels and enforcing federal fisheries laws. Before conducting inspections as an enforcement officer, I worked for NOAA for seven years as an oceanographer at the Atlantic Oceanographic and Meteorological Laboratories in Miami, Florida, performing chemical analysis of the marine atmosphere and sediment analysis. I have a B.S. in Marine Science and Biology from the University of Miami (Florida) and a Master of Science in Ocean Science from Nova Southeastern University in Fort Lauderdale.

2. I have completed the basic Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as advanced training in interviewing techniques and a law enforcement Spanish language course. I also receive annual training regarding recent changes in federal laws and regulations. I have provided training in fisheries investigations techniques to foreign law enforcement officials in Panama. Since approximately 2012, I have been attending international fisheries enforcement meetings between the United States and Mexico as a representative of NOAA law enforcement. I have conducted numerous wildlife investigations during my employment as a special agent and I have participated in the execution of multiple search warrants relating to violations of state and federal wildlife and fisheries laws.

3. This affidavit is in support of an application by the United States of America for search warrants for the internet service, email and web-hosting provider ("Google"), hereinafter referred to as the internet service provider. I seek authority to search the internet

service provider, as described in the respective Attachments A, for data located in the following email account:

    1. aquamartj@gmail.com

for items that constitute evidence of offenses relating to the illegal trade in protected species of coral. These offense include violations of Title 16, United States Code, Sections 1538(e) and 1540(b)(1), which prohibit the knowing exportation of fish and wildlife without filing the required declaration Form 3-177 with the Fish and Wildlife Service; Title 16, United States Code, Sections 1538(c)(1) and 1540(b)(1), which prohibit trade in violation of regulations implementing the Convention on International Trade in Endangered Species; and Title 18, United States Code, Sections 371 (conspiracy) and 554 (prohibiting exportations contrary to law), as further described in the Attachments B.

    4. The facts set forth in this affidavit are based on my own personal knowledge, including information gained through my training and experience and knowledge obtained from other individuals during this investigation, including other law enforcement officers and agents. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each fact that I, or others, have learned during this investigation.

## APPLICABLE U.S. LAWS

    5. Section 554 of Title 18 of the United States Code prohibits the fraudulent or knowing exportation of merchandise from the United States contrary to any U.S. law or regulation (provided that there is a statute specifying that a violation of the regulation is a crime), or in any manner facilitating the transportation, or sale of such merchandise, knowing it to be intended for export contrary to law. Section 371 of Title 18 of the United States Code prohibits willfully conspiring to commit offenses against the laws of the United States.

    6. The Lacey Act, Section 3372(a)(a)(1) of Title 16 of the United States Code, states that it is unlawful for any person to export any fish or wildlife in violation of federal law.

7. The Endangered Species Act, Sections 1538(c)(1) and 1540(b)(1) of Title 16 of the United States Code, prohibits engaging in trade in a species covered by the Convention on International Trade in Endangered Species (CITES) contrary to the provisions of the agreement. The regulations prohibit the import, export, re-export and any international trade in a species covered by CITES unless in compliance with the regulations. 50 C.F.R. §23.13(a). In order to lawfully export a species covered by CITES, the exporter must obtain, at a minimum, a CITES Export Permit from the U.S. Fish and Wildlife Service ("FWS"). 50 C.F.R. §§23.20(e) and 23.36. Additional paperwork may be required, depending on which CITES Appendix lists the wildlife. The United States, the United Kingdom and Australia are all signatories to CITES.

8. Import/export licenses from the FWS are required for the commercial importation and exportation of fish and wildlife, pursuant to 16 U.S.C. §1538(d)(1), and 50 C.F.R. §14.91. Federal regulations further require that a declaration form (Form 3-177) be presented to FWS with each import and export, pursuant to 50 C.F.R. §14.61 and 50 C.F.R. §14.63, respectively. The form 3-177 requires information to be provided, under penalty of perjury, regarding the name and address of the importer and exporter, the FWS import/export permit number, the name of the transporter and the Customs broker, and the scientific and common name of the species involved, as well as the quantity, value, and country of origin. In addition, to obtain Customs clearance of wildlife exported from the United States (required for a lawful export), an exporter must provide to FWS all permits or other documents required by the laws or regulations of any foreign country. 50 C.F.R. §14.52(c)(3).

9. Pursuant to 50 C.F.R. §14.93(b)(4), an importer or exporter of fish and wildlife must keep, in a U.S. location, import and export records that correctly describe each import or export of wildlife made under the import/export license (by common and scientific name, quantity, country of origin and date of import or export), and any subsequent disposition made of the wildlife. The regulations further require the importer/exporter to maintain records indicating the name, address, telephone number and email address of the person or

business that received the wildlife, as well as copies of all permits required by the laws and regulations of the United States and by the laws of the country of export or origin. This regulation requires such records to be maintained for a period of five years.

## WILDLIFE PROTECTED BY U.S. LAW

10. Coral are aquatic invertebrates and are members of the class *Anthozoa*. All hard corals are listed as CITES Appendix II, including *Favia* and *Acropora* species. For example, in 1985, stony corals (order *Scleractinia*), blue corals (*Helioporidae*), organ pipe corals (*Tubiporidae*) and fire corals (*Milleporidae*) were listed on Appendix II of CITES. Lace corals (*Stylasteridae*) are also listed on Appendix II. In 1981, black coral (order *Antipatharia*) was listed on Appendix II of CITES. Three species of coral (*Canthaarellus noumese*, *Siderastrea Glynni* and *Tubastaea floreana*) are listed as "endangered" under the Endangered Species Act, 16 U.S.C. § 1538. The species of coral *Euphillia paradivisa* is listed as "threatened" throughout its range under the Endangered Species Act, 16 U.S.C. § 1538. Coral is regulated in the United States as wildlife, for which all of the FWS requirements relating to import/export permits and declarations are applicable. 50 C.F.R. § 10.12. All commercial coral imports and exports are required to be declared to the FWS. The regulatory definition of wildlife includes all forms of wildlife, whether alive or dead, and any part, product, egg, or offspring thereof.

## INFORMATION PROVIDED BY AQUA SD EMPLOYEES

11. AquaSD is a company located on Clairemont Mesa Boulevard in San Diego, which sells coral and other marine life for aquariums. AquaSD is owned by Will Chang and employs Ramon Wu. On February 7, 2019 Chang and Wu each pled guilty to submitting a false record with regard to falsely labeling coral which was then exported from the United States to foreign countries such as England and Ireland, in violation of Title 16 United States Code § 3373(d). As part of their plea agreements, both Chang and Wu agreed to meet with the investigating agents to provide information on other possible targets.

12. On February 22, 2019, I participated in a debriefing with William Chang and his counsel at the San Diego United States Attorney's office. Chang advised Jose Cupido is the owner of AquamarTJ, a business in Mexico that sells coral and fish. Cupido has purchased coral from AquaSD and exported the coral to Mexico. Chang said that Cupido buys coral from him at Aqua SD about once per week, puts it in his personal truck, and transports it to Mexico. He said Coast Tropical was Cupido's export broker. Chang said Cupido may have a warehouse in San Diego, CA.

13. Later that day, FWS Special Agent Glenn Yeck performed a search of the FWS database relating to AquamarTJ and Cupido. Yeck located no record of AquamarTJ or Cupido possessing an FWS Import/Export license, or making any declarations of imports or exports of coral.

14. On February 25, 2019, I contacted Mexican Customs Officer Olga Trujano, and requested that she check Mexican Customs database for imports and exports by Cupido. Officer Trujano advised that there are no records of imports or exports under the names AquamarTJ, Aquamar Tijuana, or Jose de Jesus Cupido Meza. Her email contained information from the database regarding Cupido's name which included the following: Jose de Jesus Cupido Meza is his full name, the email is listed as aquamartj@gmail.com, and economic activity is listed as pet retail trade, medications, accessories and other products. Officer Trujano said that even though there are no records of Cupido or his business importing or exporting, he is listed in the database because he has a personal "RFC" number (similar to our Social Security number), which is a tax identification number to track compliance with tax obligations in Mexico.

15. I performed an Internet search and found a Facebook page for AquamarTJ (www.facebook.com/AquaMartijuana) which shows a photograph of a storefront bearing the name "Aquamartj" with wording underneath in Spanish which reads (translated to English) accessories, reef, marine and tropical fish. The Facebook page lists the address as Mariscal Sucre 70, Benton, Plaza Los Olivos Tijuana, Baja California 22106. The Facebook website shows photographs of corals and fish. AquamarTJ has an Instagram

account which lists "Reef, Corals, Fish, Sale" under the business name as well as color pictures of corals and a starfish.

16. On March 15, 2019, I participated in a debriefing with Ramon Wu and his counsel at the San Diego United States Attorney's office. Wu said that Cupido was a customer at AquaSD who has a business called AquamarTJ in Mexico. Cupido purchases products approximately one to two times per month at AquaSD and 99% of what Cupido buys is coral. Some of the coral species Cupido has bought in the past includes *Euphillia*, *Favia*, and *Acropora* species (which are covered by Appendix II of CITES). Wu said that on February 15, 2019, Cupido bought approximately 20-23 pieces of coral worth $1,800. Wu found a receipt on his cell phone for this sale to Cupido. Wu said Cupido called him from the border that day and told Wu he needed a copy of the receipt.

17. Wu said Cupido normally comes to AquaSD, picks out the coral he wants and transports it in a Toyota Tacoma which Wu believes is Cupido's personal truck. Wu has also seen Cupido in a commercial truck with a roll up back door. He said the truck did not have any business names written on it. Cupido normally communicates with Wu using a WeChat type web application.

18. Wu said that approximately one month ago Cupido had a conversation with him regarding exporting to Mexico and told Wu that he imported coral "legally" to Mexico. Wu said Cupido told him he uses the export broker Coast Tropical Fish, and the contact at the business is Jorge Luna.

19. Wu said imports to the United States are expensive so Cupido and others take split shipments, meaning someone imports a quantity of coral to the United States and this is split between a few different businesses.

20. On March 18, 2019, Wu's defense counsel provided me with a copy of the receipt for coral purchased by Cupido on February 15, 2019, which Wu described during his debrief. The receipt listed 16 items of nicknames for corals. I performed an Internet search the coral nicknames on the list which corresponded to the following genus names:

//

*Euphyllia, Trachyphyllia, Plerogyra, Cynarina, Acropora, Montipora, Favia,* and *Echinophyllia.* These names are all listed as CITES Appendix II on the CITES website. I also performed a check on Cupido's border crossing history. United States Customs and Border Protection ("CBP") border crossing history shows that Cupido crossed the U.S./Mexico border on February 15, 2019, at 6:08 PM PST.

21. On March 21, 2019, I received a copy of Cupido's border crossing history and a photograph of Cupido at the Otay Mesa Port of Entry on March 4, 2019. The photograph shows a male providing his identification to the CBP officer from a dark colored Toyota pickup truck.

22. On May 22, 2019, I received an email from Chang's defense counsel which contained a large PDF document which included email order requests for corals made from aquamartj@gmail.com to aquasandiego@gmail.com for the period from January 4, 2016 to January 30, 2019.

### PACKAGE SEIZED ON MAY 31, 2017

23. On May 31, 2017, FWS Wildlife Inspector Cory Kawabata seized a package at the International Mail Facility in Torrance, California. The package was sent from Ashley Tam in Hong Kong to Wahib Jose Cupido Aquamartj at 9465 Customshouse Place, Suite B San Diego, California 92154. The contents of the package were listed as "Aquarium decoration 2 pcs" and the value was listed as $30.00. The package contained 120 live shrimp. The package contained a commercial quantity of shrimp which was not declared to the FWS. Wildlife Inspector Kawabata called the phone number on the declaration form and spoke with Wahib Cherit, who said he owned a warehouse in San Diego where Cupido rented a space. He said Cupido imports fish and aquarium supplies. Cherit said Cupido lived in Tijuana, Mexico and drove to San Diego when shipments arrived at the San Diego warehouse.

24. On June 1, 2017, FWS Wildlife Inspector Rene Galindo conducted a compliance interview in Spanish with Cupido via telephone. During the interview, Cupido advised that he owned a business in Tijuana and only imported dry goods to Mexico for his

store. Cupido also stated he buys hard coral from a supplier in New York for personal use. Wildlife Inspector Galindo explained the FWS regulations pertaining to imports and exports. He explained that hard corals are protected and are required to be declared to the FWS upon export. He also told Cupido that he must have a CITES permit to export coral to Mexico whether it be for personal or commercial use. Wildlife Inspector Kawabata found no record in the FWS database of any live exports to Mexico for Cupido or his business Aquamartj.

PAYPAL RECORDS

25. On June 7, 2019, I performed an analysis of Cupido's PayPal records, searching for payments made by Cupido to businesses which sell coral and marine tropical fish. Cupido made two payments to AquaSD using PayPal in 2016, 11 payments in 2017, and one payment on February 28, 2019. There were also two payments made to VW Reefs in 2016. The email Cupido used in these transactions is aquamartj@gmail.com.

26. PayPal records also show that Cupido made payments to AquaSD, Cali Kid Corals, Coral Mafia, Pirates Reef Corals, and Sea Side Aquatics. The transactions with these businesses occurred from April 2016 through February 2019.

RECENT PURCHASE FROM AQUA SD

27. On June 25, 2019, Ramon Wu advised (through his attorney) that Cupido had purchased coral at AquaSD that day. On June 26, 2019, a CBP officer confirmed that Cupido's vehicle (Mexican plate AP 20-477) entered the United States from Mexico at 12:37 PM PST and left the United States at 3:53 PM PST on June 25, 2019. On June 28, 2019 I received a copy of a sales invoice (through William Chang's attorney). The invoice lists the sale of 17 pieces of coral on June 26, 2019, total value $2,500 from AquaSD to Cupido. The invoice reflected the purchase of sixteen specimens of the following species which are listed on Appendix II of CITES: *Euphyllia, Micromussa, Alveopora,* and *Lobophyllia* .

28. Based on my training and experience, and conversations with other law enforcement agents, I know that commercial dealers in marine species post images of their

products on the internet and send images and messages via email, Facebook Messenger, WhatsApp, and other social media platforms to potential customers to facilitate sales. In particular, with respect to international sales, I know that business is conducted via electronic mail, including transmission of invoices and records of payment and shipping records, in order to facilitate the international transactions. I know that in other investigations I have seen shipping records, receipts, financial records, and documents sent via email. I also know that such businesses contact regulatory agencies (federal, state, local and foreign) via email, seeking and providing information and documentation. Such businesses are also known to send and receive via email links to informational sites on the internet relevant to their business.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

29.  Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Google, Inc. are not. It would be inappropriate and impractical for federal agents to search the vast computer network of the internet service providers for the relevant accounts and then to analyze the contents of those accounts on the premises of the internet service providers. The impact on the internet service providers' businesses would be disruptive and severe.

30.  Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the Google Inc. email account aquamartj@gmail.com as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of the internet service providers, to protect the privacy of Google, Inc. subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, I seek authorization to allow the internet service providers to make a digital copy of the entire contents of the account subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be imaged and the image will then be analyzed to identify communications and other electronic

records subject to seizure pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

31. Analyzing the data to be provided by the internet service providers may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format and, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. The Internet Service Providers do not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

32. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by Google, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination will complete the analysis within one hundred twenty (120) days of receipt of the data from the service provider, absent further application to this court.

//

33. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

34. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

### GENUINE RISKS OF DESTRUCTION OF DATA

35. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically-stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence. A preservation letter has been sent to Google, Inc. regarding the target account.

### PRIOR ATTEMPTS TO OBTAIN DATA

36. The United States has not attempted to obtain this data by other means other than as described herein.

### PROCEDURES TO PROTECT THIRD PARTY PRIVACY

37. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant. In the event that the personnel lawfully conducting the analysis identify information pertaining to crimes outside the scope of the warrant, such information will not be used except to obtain a new warrant authorizing a search for such information. In the event a new warrant is obtained, the government may make use of the data seized in any lawful manner. Absent a new warrant, the personnel conducting the analysis may continue to search for and seize data only within the scope of this warrant.

38. Specifically, there is probable cause that evidence of violations of 18 U.S.C. § 371 (Conspiracy); 18 U.S.C. §554 (Exportation Contrary to Law); 16 U.S.C. §§ 3372(a)(1)

and 3373(d), (Export of wildlife in violation of federal law); 16 U.S.C. §§1538(e) and 1540(b)(1), (knowing exportation of fish and wildlife without filing the required declaration Form 3-177); and 16 U.S.C. §§ 1538(c)(1) and 1540(b)(1) (violation of regulations implementing the Convention on International Trade in Endangered Species), related to the illegal exportation and trafficking in coral will be found in the target account.

## CONCLUSION

39. Based on the foregoing, there is probable cause to believe the items identified in Attachment B constitute evidence of violations of 18 U.S.C. § 371 (Conspiracy); 18 U.S.C. §554 (Exportation Contrary to Law); 16 U.S.C. §§3372(a)(1) (Export in violation of federal law); 16 U.S.C. §§ 1538(e) and 1540(b)(1) (knowing exportation of fish and wildlife without filing the required declaration); 16 U.S.C. §§ 1538(c)(1) and 1540(b)(1) (knowing violation of regulations implementing the Convention on International Trade in Endangered Species), related to illegal trade in coral and will be found in the target account, as described in Attachment A, during the time period described in Attachment B.

_/s/ Michelle Zetwo_
Michelle Zetwo
Special Agent
National Oceanic and Atmospheric Administration
Office of Law Enforcement

Subscribed and sworn to before me this __2__ day of July, 2019.

_/s/ Jill Burkhardt_
HONORABLE JILL L. BURKHARDT
UNITED STATES MAGISTRATE JUDGE